STATE of Utah, Plaintiff and Respondent,

v.

William ANDREWS, Defendant and Appellant.

No. 13902.

Supreme Court of Utah.

Nov. 25, 1977.

For Opinion on Rehearing Feb. 27, 1978.
See 576 P.2d 857.

John T. Caine of Public Defenders Ass'n of Weber County, Ogden, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Robert R. Wallace, Asst. Attys. Gen., Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

The defendant in this case was sentenced to death. See companion case, *State v. Pierre*, No. 13903, filed this date, Utah, 572 P.2d 1338, (1977), the numerous facts, references, authorities and reasons of which are pertinent and controlling here and to which the reader is referred.

As in *Pierre*, supra, defendant was found guilty in the guilt phase of the trial on the three counts of first degree murder and the two counts of aggravated robbery, and in the penalty phase, the jury returned a unanimous verdict of the death penalty against the defendant on each of the murder counts. Also, as in *Pierre* the District Judge then on November 27, 1974, sentenced the defendant to death by shooting at the Utah State Prison on all counts of first degree murder, and he also sentenced the defendant to an indeterminate term of five years to life at said prison on the two counts of aggravated robbery.

Facts, explanations, and other matters *supplemental* to those recounted in *Pierre* are stated in this opinion.

Evidence by witness Orren W. Walker, Jr. at the guilt phase revealed that defendant asked Pierre in the basement of the Hi-Fi Shop, after Pierre had discharged his hand gun (not at that time shooting anyone), "What did you do that for, man"; that defendant was nervous and upset; that when Walker made no movement after being told by Pierre to administer the Drano to Michelle Ansley, Stanley Walker, and Cortney Naisbitt, defendant said to Walker, "Man, there is a gun at your head"; that either before or after the administration of the Drano to the victims defendant said: "I can't do it, I'm scared", though Walker stated he did not know to what this remark

of defendant referred; and that Andrews, who left and returned to the basement on more than one occasion during the evening of April 22nd, was not observed firing any gun nor was he present when Michelle was raped and all the victims were shot.

Evidence at the penalty phase of the trial at which the defendant testified demonstrated that he was at the time of trial 20 years of age, was abandoned at birth by his father, left home when he was 10, committed a burglary at 15, went to the Job Corps thereafter, and committed auto theft while in the Job Corps (for which he was placed on probation). While in the United States Air Force, defendant failed to appear for a dental appointment, failed to report for duty, without authorization left a place of duty, and had a separation action from the Air Force commenced against him on the basis he was "minimal productive, and a limited potential airman", though this action was not completed due to his arrest in this case.

Defendant adopts the arguments made by Dale S. Pierre in *Pierre,* supra, concerning allegations of the unconstitutionality of the death penalty, the denial of a fair trial and violation of due process because of prejudicial pre-trial publicity, the creation of error by the District Court's failure to grant motions for change of venue, separate trials, and continuance as well as creation of error by the Court's permitting the testimony of Dr. Byron H. Naisbitt. And these arguments are rejected for the same reasons noted in *Pierre,* supra.

■ Defendant specifically cites as error the Court's refusal to sequester the jury from November 15, 1974, the date the guilt phase concluded, to November 20, 1974, the date the penalty phase commenced. Defendant contends that the "jury members *could* be subjected to great pressure over the five day period from outside sources, which pressure *could* affect the sentence". (Emphasis added.)

Defendant did not show any actual juror bias as a result of improper publicity nor did he show that the publicity was inherently prejudicial. The authorities and reasoning noted in *Pierre,* supra, pertaining primarily to pre-trial publicity obtain and control concerning defendant's claim that the Court erred in not sequestering during the period between the guilt and penalty phase of the trial. We hold the District Court did not err or abuse its discretion in denying defendant's motion on this matter.

Because a comprehensive review of this case, being a capital one, is appropriate and necessary, we now address matters not specifically raised in defendant's brief, viz., whether the Utah death penalty statutes, Utah Code Annotated, 1953, Sections 76–3–206 and 76–3–207, as enacted in 1973, applicable to defendant, meet the constitutional requirements established in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) and *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); whether the standard of proof applied by the District Court in the defendant's penalty phase violated due process;[1] and whether the sentence of death imposed upon the defendant should be vacated because it is disproportionate and excessive in relation to the offenses for which he was convicted and his involvement therein. As to these first two matters, the reasons and conclusions stated in *Pierre,* supra, concerning them apply and control here.

■ As to the matter of alleged disproportionality between the capital offenses and the sentence of death imposed against the defendant, this Court recited in detail in *Pierre* the nature and circumstances of the three murders. We have briefly supplemented here these recitals by enumerating the particularized characteristics of the defendant and his involvement in these murders. And we conclude that so far as the verdict for death is concerned, the evidence discloses overwhelmingly that the jury could reasonably and unarbitrarily find as it did; and after our review of the matter, we hold that because of defendant's involve-

---

1. Art. I, Sec. 7, Utah Constitution; Fourteenth Amendment, U.S. Constitution.

ment in these murders and his background and characteristics, disproportionality between the crimes of murder and the death sentence does not exist.

Defendant's complicity in these murders was deep; his actions bold and gross. He indeed significantly aided in triggering a milieu that ended in catastrophe and death—and did so knowing at the beginning of this episode of terror that it would most probably conclude as it did.

Affirmed and remanded for further proceeding consistent with this opinion. No costs awarded.

ELLETT, C. J., and CROCKETT, and HALL, JJ., concur.

MAUGHAN, Justice (concurring and dissenting):

See my concurring and dissenting opinion in the companion case of *State of Utah v. Dale S. Pierre*, Utah, No. 13903, 572 P.2d 1338 (1977).