**William ANDREWS, Plaintiff and Appellant,**

**v.**

**Lawrence MORRIS, Warden of the Utah State Prison, Defendant and Respondent.**

**No. 16168.**

Supreme Court of Utah.

Feb. 13, 1980.

---

1. *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976). ).

John T. Caine, Richard W. Giauque of Berman & Giauque, Salt Lake City, Timothy K. Ford, Seattle, Wash., for plaintiff and appellant.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Robert R. Wallace, Asst. Attys. Gen., Salt Lake City, for defendant and respondent.

HALL, Justice:

Appellant, William Andrews (hereinafter "Andrews"), appeals from the order of the Third Judicial District Court which dismissed his petition for postconviction relief.[1] Said petition challenged his commitment under a sentence of death by shooting for murder in the first degree[2] as being in violation of the Constitution of the United States. (Andrews asserts no violation of the Constitution of Utah although it affords similar, if not more extensive protections).

Andrews and a co-defendant, Dale S. Pierre, were convicted of a triple murder and robbery perpetrated on April 22, 1974, at the Hi-Fi shop in Ogden, Utah. The subsequent verdict of the jury[3] that they be sentenced to death was rendered and the court thereafter sentenced them to death by shooting.[4] Their unsuccessful appeals to this Court[5] resulted in the affirmance of their conviction and sentence and rehearings were subsequently denied. Their petitions for certiorari to the United States Supreme Court were also unsuccessful and have since been denied. Each defendant now seeks habeas corpus relief. See companion case, *Pierre v. Morris,* Utah, 607 P.2d 812, also filed this date.

In his petition for habeas corpus, Andrews urges two general contentions: (1) that the jury was predisposed to convict because of racial tensions which deprived him of a trial by a fair and impartial jury, and (2) that the death sentence violates the Constitution. Specifically, in support of the latter contention he urges:

A. That Utah's sentencing statutes[6] permit an arbitrary and discretionary imposition of the death penalty in violation of the constitutional principles enunciated in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

B. That the pattern of imposition of the death penalty in Utah and the United States reflects that the sentence of death is imposed so rarely and arbitrarily and discriminatorily as to violate constitutional principles, and again cites *Furman v. Georgia.*

C. That the imposition of the death penalty upon Andrews, he not having personally taken life or intended to take life, is unconstitutionally cruel and disproportionate to the crimes.

D. That execution of the sentence of death by shooting or hanging inflicts pain inconsistent with evolving standards of decency and is "cruel" and "unusual."

In his argument to the court below, Andrews delineated the issue presented as whether or not new, significant developments of fact or law have occurred since the taking of the direct appeal which have created issues that should now be litigated and which would not have been litigated in prior proceedings. He conceded that the racial issue, the issue as to the constitutionality of the sentencing statutes, and the issue as to whether the death penalty

---

1. Sought pursuant to the provisions of Rule 65B(i), Rules of Civil Procedure.

2. U.C.A., 1953, 76–5–202, designating said offense as a capital felony.

3. Bifurcated trial with a separate sentencing proceeding provided for by U.C.A., 1953, 76–3–207.

4. See U.C.A., 1953, 77–36–16, providing for infliction of death by hanging, or by shooting, at the defendant's election.

5. *State v. Andrews,* Utah, 574 P.2d 709 (1977) and *State v. Pierre,* Utah, 572 P.2d 1338 (1977).

6. U.C.A., 1953, 76–3–206 and 207 (enacted July, 1973).

should be imposed upon one not having personally taken life or intended to take life, were substantially raised and addressed on the direct appeal.

Andrews conceded further that a collateral attack by way of habeas corpus may not be utilized as a substitute for, or a duplication of a direct appeal.[7] Nevertheless, he contends that there are certain constitutional rights yet to be adjudicated, and which have not been deliberately waived.[8]

In support of his request for an evidentiary hearing, Andrews urged the applicability of certain cases which he termed "new," among which were: *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); *Presnell v. Georgia*, 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978); *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Roberts v. Louisiana*, 431 U.S. 633, 97 S.Ct. 1993, 52 L.Ed.2d 637 (1977); *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); and *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977).

The trial court recited that it had reviewed this Court's rulings on Andrews' and Pierre's direct appeals and remarked that "nearly every issue that could possibly be raised in a capital case except the . . . question of whether or not the death sentence is being imposed in a fair manner," had been raised and ruled upon.[9] The court also observed:

One thing that disturbs me is the fact that, regardless of our feeling about capital punishment, it seems that what you are urging is that in any situation where an individual is convicted and sentenced to death I guess we should wait over a few years period and see whether or not there are others that are so convicted and sentenced and then if it is not being imposed on an equal pattern then the man should have a stay and should have a new trial or something. I'm not sure I buy that theory but I'm willing to give it some consideration. I'm not sure that I have a right to even voice an opinion about it. The question is whether or not there is a new issue that should be considered and the only one that I can see is the one involving prosecutorial discretion as it affects the imposition of the death penalty so I'll consider it . . . . .

The court thereafter made the following findings and conclusions, and based thereon, dismissed the petition:

1. No developments of fact or law material to the determination of the legality and constitutionality of the conviction and sentence of the Petitioner herein

---

7. *Bennett v. Smith*, Utah, 547 P.2d 696 (1976); *Maguire v. Smith*, Utah, 547 P.2d 697 (1976); *Brown v. Turner*, 21 Utah 2d 96, 440 P.2d 968 (1968); and *Bryant v. Turner*, 19 Utah 2d 284, 431 P.2d 121 (1967).

8. Relying upon *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) which set forth the "deliberate by-pass" doctrine which placed upon the state the burden of persuasion that there had been a deliberate by-pass of a constitutional right.

9. The issues addressed by this Court in *Pierre* included the following:
   (1) Constitutionality of the death penalty statutes viewed in light of *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); and *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).
   (2) Constitutionality of the lack of *automatic* appellate review.

   (3) Whether the death penalty serves a compelling state interest.
   (4) Constitutional standard of proof in penalty phase of bifurcated trial.
   (5) Prejudicial effect of pre-trial publicity.
   (6) Prejudicial effect of hearsay testimony.
   (7) Whether sentence of death was disproportionate and excessive in relation to offenses committed.

   Although re-hearing was denied, a *supplemental* opinion addressed the issue of *actual* prejudice in connection with the napkin incident. See *State v. Andrews*, Utah, 576 P.2d 857 (1978).

   *Andrews* adopted the basic constitutional arguments advanced in *Pierre*, and the issue as to the failure to sequester the jury was raised and addressed. Although not raised by *Andrews*, the Court also addressed: (1) the constitutionality of the death penalty statute; (2) the standard of proof applicable in the penalty phase of the trial; and (3) whether the death sentence was disproportionate and excessive in relation to the offenses committed.

have occurred since the filing of Petitioner's direct appeal to the Utah Supreme Court and that Court's decision on that appeal.

2. All the issues regarding the constitutionality of the processes for death sentencing under Utah law, the constitutionality of the death sentences in Petitioner's case, and the effect of any alleged prejudicial publicity or influences on Petitioner's trial which are raised or could have been raised by this Petition are the same issues that Petitioner raised in his direct appeal to the Utah Supreme Court.

3. Petitioner's claim that Utah's death penalty law is being applied arbitrarily and discriminatorily fails to state a claim on which relief could be granted or on which a hearing need be held. Moreover, petitioner could and should have raised such issue on direct appeal.

4. Constitutional issues identical to those raised and decided on direct appeal cannot be raised again in collateral proceedings.

5. Constitutional challenges to the pattern of application of a criminal statute or the excessiveness of a criminal sentence which were not but could have been raised on direct appeal cannot be raised through collateral proceedings.

Andrews' assertions of error consist principally of the trial court's failure to afford an evidentiary hearing and its failure to apply new case law which he asserts provides a basis for habeas corpus relief. However, a further underlying issue emerges, and that is, whether or not the waiver doctrine heretofore followed in Utah remains viable, or whether it has been diminished by said Rule 65B(i).[10]

10. Supra, footnote 1.

11. Supra, footnote 8.

12. Supra, footnote 7.

13. Id.

14. Supra, footnote 6.

15. 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

This Court has traditionally applied a restrictive waiver doctrine, similar to the common law doctrine of the federal courts prior to *Fay v. Noia*,[11] and has consistently held that a collateral attack by way of habeas corpus may not be utilized as a substitute for, or a duplication of, a direct appeal. Further, issues not raised on direct appeal, but that could have been raised, are barred.[12]

In *Brown v. Turner*,[13] the proper scope and limitations upon the use of habeas corpus after conviction were summarized as:

> . . . It [habeas corpus] is not a substitute for and cannot properly be treated as a regular appellate review [citation omitted]. It is an extraordinary remedy which is properly invocable only when the court had no jurisdiction over the person or the offense, or where the requirements of law have been so disregarded that the party is substantially and effectively denied due process of law, or where some such fact is shown that it would be unconscionable not to re-examine the conviction. [Citing *Bryant v. Turner*, supra, footnote 7.]

Utah law [14] appears to be entirely consistent with the evolving federal law since *Fay v. Noia*. In *Stone v. Powell*,[15] the Court held that a state prisoner who asserted that his trial had been prejudiced by the admission of evidence procured in an illegal search and seizure should be denied federal habeas relief *unless he could show that he had been denied a full and fair opportunity to litigate that claim in the state court.*[16]

The case of *Wainwright v. Sykes* [17] expressly limited *Fay v. Noia*. *Wainwright* addressed a factual matter having to do with the failure of defense counsel to make a contemporaneous objection to the admis-

16. In accord: *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) and *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976).

17. 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

sion of inculpatory statements in violation of *Miranda* rights. Under Florida law, said failure to object constituted a waiver of the right to raise the issue again through post-conviction proceedings. The court reversed the circuit court and held that the procedural default constituted a waiver that would extend to the federal system. Thus it is seen that *Wainwright* establishes a "cause and prejudice" test of waiver narrower than the "knowing and intelligent" standard of *Fay v. Noia*, and places the burden of persuasion upon the petitioner.

The obvious focus of *Wainwright* was on the need for finality of convictions, a worthy endeavor, long recognized and focused upon by this Court.

The portion of Rule 65B(i) which pertains to prior adjudication of issues reads as follows:

(2) . . .

The complaint shall further state that the legality or constitutionality of his commitment or confinement *has not already been adjudged in a prior habeas corpus or other similar proceeding*; and if the complainant shall have instituted prior similar proceedings in any court, state or federal, within the State of Utah, he shall so state in his complaint, . . and shall set forth the reasons for the denail of relief in such other court. In such case, *if it is apparent to the court in which the proceeding under this Rule is instituted that the legality or constitutionality of his confinement has already been adjudged in such prior proceedings, the court shall forthwith dismiss such complaint*, giving written notice thereof by mail to the complaint, and no further proceedings shall be had on such complaint. [Emphasis added.]

■ We deem the foregoing provisions to be consistent with the doctrine of waiver as heretofore followed in Utah and that they have in no way diminished said doctrine. We also deem the continued application of the doctrine as a fair means of assuring finality of appeals without any sacrifice of constitutional rights.

We turn now to the question as to the propriety of the trial court's order of dismissal without an evidentiary hearing.

We note initially that the petition for relief is drawn in conclusional language and is lacking in factual data to support its allegations, contrary to the mandate of said Rule 65B(i), which reads in pertinent part as follows:

(2) The complaint [petition] . . . shall set forth in plain and concise terms the factual data constituting each and every manner in which the complainant claims that any constitutional rights were violated. The complaint shall have attached thereto affidavits, copies of records, or other evidence supporting such allegations . . . .

In fact, the petition seeks "adequate" time for briefing, discovery, and preparation for hearing thereon, yet the hearing on the motion to dismiss the petition proceeded without objection or request for continuance.

■ The case of *Spinkellink v. Wainwright*[18] stands for the proposition that where it affirmatively appears from the petition that a petitioner is not entitled to the writ, an evidentiary hearing is unnecessary. Hence, if the petition raises legal questions only, an evidentiary hearing to fully develop the underlying facts would be pointless, and is not required.

■ In the instant case, the hearing on the motion to dismiss was held on November 30, 1978, some twelve months after the November 25, 1977, affirmance of the conviction and sentence on direct appeal. We deem that to be adequate time to assemble all pertinent data for postconviction proceedings. Andrews clearly had the burden of showing why relief should be granted, including why the issues raised could not have been raised on appeal. In this regard his petition was deficient and thus failed to state a claim.

■ Notwithstanding the foregoing determination, we now proceed to address the

---

18. 578 F.2d 582 (5th Cir. 1978), cert. denied 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979).

specific points of error raised by the appeal. Andrews first contends that the trial court erred in failing to determine which of his constitutional claims were new, whether any of them had been waived, and which of them were based on new facts or law not available at the time of his direct appeal. In light of our discussion of this matter in the preceding paragraphs, and in further light of the findings and conclusions of the trial court hereinabove recited, we deem this contention to be without merit.

■ Andrews' second assertion of error is that the trial court applied the doctrine of res adjudicata without finding facts and without the entire record before it. In so doing, he fails to recognize the unique nature of post-conviction proceedings. Although the proceedings are civil, they are not governed by the general rules of civil procedure, but *specifically* by said Rule 65B(i) which mandates that the complainant (petitioner) shall set forth the factual data in support of his claims in plain and concise terms, shall state whether or not the legality or constitutionality of his commitment or confinement has been previously adjudged, and if he shall have instituted prior proceedings for relief, the reasons for the denial thereof. In such case, if it is apparent to the court that the matter has already been adjudged in such prior proceedings, it shall forthwith dismiss the complaint.

■ In light of the foregoing provisions of the Rule, and in light of the long-established doctrine of waiver, the trial court was clearly and simply called upon to determine whether the issues raised in the petition were or could have been raised on appeal. It was not necessary to look beyond the pleadings and the documents of record in order to determine the legal sufficiency of the petition and our review thereof causes us to conclude that the court did not err in dismissing the petition.

Andrews' third and fourth assertions of error pertain to the alleged failure of the trial court to consider new constitutional decisions and apply them retroactively to this case; hence they are considered together. Assuming, but without deciding, that new constitutional case law has retroactive application to collateral attacks on convictions as well as direct appeals therefrom, we survey the cases relied upon.

Andrews makes three basic contentions as to the unconstitutionality of the death penalty statutes: (1) that the sentencing portion of the trial is deficient in that (a) no notice is given as to the grounds (aggravating circumstances) upon which the death penalty is sought; (b) the State is not required to expressly plead or prove the grounds supporting the death penalty; (c) no factual findings of grounds relied upon by the jury are required; and (d) appellate review is not adequate because of the absence of factual findings; (2) the death penalty may not be imposed because he was not specifically found to have taken life or intended to take life; and (3) that the method of execution constitutes cruel and unusual punishment.

■ It is to be noted that U.C.A., 1953, 76-5-202 specifically sets forth eight aggravating circumstances, one or more of which must be alleged, proved, and found by the fact finder. Hence, one charged with a capital felony is put on notice and is made aware of what the State must prove and thus able to prepare his defense.

Andrews relies upon *Gardner v. Florida* and *Presnell v. Georgia*, supra, on the issue of notice. However, each of those cases are distinguishable on their facts.

*Gardner* involved a sentence of death based upon a confidential presentence report that was not disclosed to the defendant. The United States Supreme Court reversed and stated the following:

. . . *[i]t is important that the record on appeal disclose to the reviewing court the considerations which motivated the death sentence in every case in which it is imposed.* Without full disclosure of the basis for the death sentence, the Florida capital-sentencing procedure would be subject to the defects which resulted in the holding of unconstitutionality in *Furman v. Georgia.* [Emphasis added.]

Andrews was not sentenced on the basis of any undisclosed or secret information and he was on adequate notice of the grounds upon which the sentencing authority would rely.

■ The Utah procedure, as followed in the instant case, provided a complete record on appeal that disclosed all of the considerations which motivated the death sentence and hence, is totally consistent with the holding in *Gardner.*

In *Presnell*, the Georgia statutes required a finding of bodily injury in order to support the capital offense of murder committed while engaged in the commission of a kidnapping. Although the jury did not make a finding of bodily injury, the Georgia Supreme Court affirmed, stating that evidence of bodily injury was apparent from the record. The United States Supreme Court reversed for the reason that the defendant had no notice whatsoever of the grounds upon which the state was relying to prove the requisite aggravating circumstances.

*Presnell* is inapposite to the instant case since Andrews was at all times on notice of the aggravating circumstances provided for in U.C.A., 1953, 76–5–202, supra. Unlike in *Presnell*, the "fundamental principles of procedural fairness" were adhered to herein. The jury had already found at least one aggravating circumstance in the guilt phase of the trial. Consequently, there was not a denial of an opportunity to rebut the State's case during the sentencing phase of the trial. There appears to be no support for Andrews' contention that he had no notice of the grounds upon which the death penalty would be based. This is particularly so in light of the especially heinous nature of the murders.

■ In *Gardner*, it was stated that so long as the record reveals the evidentiary basis for the imposition of the death penalty so as to insure that the appellate court may conduct a comprehensive review of the proceedings and insure that the penalty was not imposed arbitrarily or capriciously, the concerns of *Furman v. Georgia*, supra, are met. Hence, written findings of aggravating circumstances are not required.

The record in this case reveals the evidence supporting the aggravating circumstances charged and discloses that the evidence in mitigation of the offense was virtually nonexistent.[19]

Andrews cites *Woodson v. North Carolina* and *Roberts v. Louisiana*, supra, as authority for his contention that written factual findings are required at the sentencing phase of trial. However, neither of said cases stands for that specific proposition.

*Woodson* holds that "the fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." No implication arises therefrom that the "consideration" referred to be reduced to written findings.

The Utah statutes[20] clearly afford such "consideration" inasmuch as they specifically mandate a hearing "as to any matter the court deems relevant to sentence, including but not limited to the nature and circumstances of the crime, the defendant's character, background, history, mental and physical condition, and any other facts in aggravation or mitigation of the penalty." In addition, the statutes specify the aggravating *and* mitigating circumstances which *shall* be included.

In *Roberts*, the Court was again faced with the issue as to the constitutionality of a *mandatory* death sentence.[21] The murder victim was a police officer performing his regular duties. The Court observed that although such fact may be regarded as an aggravating circumstance:

19. Supra, footnote 5.

20. Supra, footnote 6.

21. The Court had previously determined that such a sentence could not be imposed. See Stanislaus *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976).

. . . [i]t is incorrect to suppose that no mitigating circumstances can exist when the victim is a police officer. . . As we emphasized repeatedly in *Roberts* [Stanislaus] and its companion cases decided last Term, it is essential that the capital-sentencing decision allow for consideration of whatever mitigating circumstances may be relevant to either the particular offender or the particular offense. Because the Louisiana statute does not allow for consideration of particularized mitigating factors, it is unconstitutional. [Citing its decision in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), holding the Texas sentencing procedure to be constitutionally adequate since it permitted mitigating circumstances to be considered by the jury.]

Again, just as in *Woodson*, no requirement of written findings is imposed and it is clear that the Utah statutes adequately meet the standards established by authority of the cases cited.

Andrews next cites *Lockett v. Ohio*, supra, wherein it was stated that "[i]t violates the Eighth Amendment to impose the penalty of death without a finding that the defendant possessed a purpose to cause the death of the victim."

In *Lockett*, the defendant was sentenced to death as a consequence of her participation as the "wheelman" in a robbery which resulted in a murder.

■ The facts in *Lockett* are to be contrasted with those of the instant case wherein Andrews was an active participant in acts of torture which preceded the final acts of murder.[22] Also, the central focus of *Lockett* was on the failure of the Ohio statute to permit an adequate consideration of mitigating circumstances. In any event, the instant case does not impose a "purely vicarious theory of liability" as characterized by Justice Marshall in *Lockett*.

We deem *Lockett* to be inapplicable for two reasons: (1) Andrews' acts of participation were significantly different than Lockett's and (2) the Utah sentencing procedure allows for full consideration of mitigating circumstances whereas Ohio's did not.

■ Andrews cites no authority in support of his contention that the imposition of the death penalty by shooting or hanging is "cruel" and "unusual." He does cite *Coker v. Georgia*, supra, which struck down the death penalty for rape as being "barbaric" and "excessive" for such offense. However, the holding in *Coker* is not to be strained to cover the *means* of imposing the death penalty in an appropriate case.[23]

■ The Utah Legislature has seen fit to provide the death penalty as a proportionate sentence for capital felonies and it is not the prerogative of this Court to determine otherwise. That conclusion was aptly stated in *Gregg v. Georgia*[24] as follows:

Therefore, in assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity. We may not require the legislature to select the least severe penalty possible so long as the penalty selected is not cruelly inhumane or disproportionate to the crime involved. And a heavy burden rests on those who would attack the judgment of the representatives of the people.

This is true in part because the constitutional test is intertwined with an assessment of contemporary standards and the legislative judgment weighs heavily in ascertaining such standards. "[I]n a democratic society legislatures, not courts, are constituted to respond to the will and consequently the moral values of the people." [Citing *Furman v. Georgia*, supra.]

22. As to the participation of Andrews in the events leading up to the murders see facts set forth in *State v. Pierre*, supra, footnote 5.

23. *Wilkerson v. Utah*, 99 U.S. 130, 25 L.Ed. 345 (1879).

24. 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

Andrews' final assertion of error challenges the dismissal of his claim that the death sentence was imposed arbitrarily and as the result of racial discrimination. He contends that his allegations went not only to prosecutorial discretion but to the *whole system* (as in *Furman v. Georgia*, supra), and consequently he was entitled to an evidentiary hearing. This contention is somewhat novel, however, a similar contention was advanced in *Spinkellink v. Wainwright*, supra, wherein it was alleged that the Florida statute was being applied arbitrarily, capriciously, excessively, and disproportionately in violation of the eighth and fourteenth amendments, and that the statute was being administered impermissibly and discriminatorily by prosecutors in the plea bargaining process against defendants convicted of murdering whites as opposed to blacks, and against males and poor persons.

If this latter interpretation is the correct reading of *Proffitt*, serious problems arise. First, every criminal defendant sentenced to death under Section 921.141 could through federal habeas corpus proceedings attack the statute as applied *by alleging that more convicted murderers, equally or more deserving to die, had been spared, and thus that the death penalty was being applied arbitrarily and capriciously, as evidenced by his own case.* The federal courts then would be compelled continuously to question every substantive decision of the Florida criminal justice system with regard to the imposition of the death penalty. The intrusion would not be limited to the Florida Supreme Court. It would be necessary also, in order to review properly the Florida Supreme Court's decision to review the determinations of the trial courts. And in order to review properly those determinations, a careful examination of every trial record would be in order.

*A thorough review would necessitate looking behind the decisions of jurors and prosecutors, as well.* Additionally, unsuccessful litigants could, before their sentences were carried out, *challenge their sentences again and again as each later-convicted murderer was given life imprisonment, because the circumstances of each additional defendant so sentenced would become additional factors to be considered.* The process would be never-ending and the benchmark for comparison would be chronically undefined. Further, there is no reason to believe that the federal judiciary can render better justice. As the Florida Supreme Court itself so candidly admits, see *Provence v. State*, supra, Fla., 337 So.2d 783 at 787, reasonable persons can differ over the fate of every criminal defendant in every death penalty case. If the federal courts retried again and again the aggravating and mitigating circumstances in each of these cases, we may at times reach results different from those reached in the Florida state courts, but our conclusions would be no more, nor no less, accurate. Such is the human condition. . . .

The Supreme Court in *Proffitt* or in *Furman, Gregg, Jurek, Woodson*, or *Roberts*, could not have intended these results. . . . [Emphasis added.]

■ We adopt the foregoing rationale and coupled with what has been said heretofore, conclude that the trial court's dismissal was proper.

The order of dismissal is affirmed.

CROCKETT, C. J., concurs.

WILKINS, J., concurs in result.

STEWART, Justice (concurring in result):

I am able to concur only in the result in this case because I hold a different view of the appropriate role and function of the writ of habeas corpus in our criminal justice system. That view, however, does not in this case compel me to a result different on the merits from that reached in the plurality decision.

Nevertheless, I think it appropriate to set forth my view on one crucial point raised by appellant Andrews. Andrews argues that United States Supreme Court decisions decided subsequent to our affirmance of the

sentence of execution require the issuance of a writ of habeas corpus.

Andrews contends, *inter alia*, that the intervening opinion of the United States Supreme Court in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), requires the issuance of a writ and the setting aside of the sentence of execution. Andrews states that it has never been alleged or proved that he personally took a life or intended to take a life, and he argues that *Lockett* stands for the proposition that capital punishment in such circumstances is unconstitutionally cruel and disproportionate to the crime and that the sentence of death must therefore be set aside. It is true that the evidence in this case does not sustain a finding that Andrews himself actually took a life. However, the holding of *Lockett* does not in fact sustain the major premise of appellant's argument. Justice White's opinion, which represents only his views, is to the effect that one must, in order to be subject to the death penalty, have personally intended that a murder be committed even though he himself did not take a life.

I agree with the proposition stated by Justice White that "it violates the Eighth Amendment [to the United States Constitution] to impose the penalty of death without a finding that the defendant possessed a purpose to cause the death of the victim." 438 U.S. at 624, 98 S.Ct. at 2983. I also believe that Article I, § 9 of the Utah Constitution, which prohibits cruel and unusual punishment, imposes the same requirement; and so does the Utah criminal code, see § 76–5–202, U.C.A. (1953), as amended.

Human experience is simply rife with instances, especially with young people, where group activities evolve into unlawful conduct and one or more persons go beyond the intention of other members of the group and commit an act which cannot and should not be attributed to every person in the group.

Capital punishment simply should not be imposed on the basis of a constructive in-

tent or *mens rea*. This does not mean that a person could not be subjected to capital punishment for engaging in a criminal conspiracy to intentionally take the life of another or for aiding or abetting such an endeavor, as long as the jury is instructed that a person not directly responsible for the actual killing must have had the purpose and intention that another be killed and the evidence supports that proposition. Indeed, it should be noted that murder in the first degree is defined by § 76–5–202 as a criminal homicide in which "the actor intentionally or knowingly causes the death of another . . . ." In short, an imputed *mens rea* is insufficient under the Utah statute, and in my view under the Utah and the United States Constitutions, to support capital punishment.

In the instant case, however, the trial judge instructed the jury with great care that the death penalty could be imposed only if the jury found that each defendant personally intended that one or more of the victims be killed. In my view the evidence in this case amply supports the implied jury finding that the appellant did in fact harbor such an intention.

MAUGHAN, Justice (dissenting):

With the rigid adherence to the restrictive waiver doctrine, in a habeas corpus action involving the death penalty, I cannot concur. The need for finality of convictions is an insufficient reason when the convictions involve the death penalty in the first two cases tried under the new statute. The unbridled reliance on the infallibility of this court in assessing the constitutional issues involved in the prior appeals of Pierre and Andrews is not consistent with the broad role this court must play in performing its institutional function. As pointed out by the United States Supreme Court, since there is a qualitative difference in the sentence of death, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment, in a specific case.[1] Under the

---

1. *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976).

circumstances the claims of the petitioners should be reviewed in these proceedings with a consciousness of the qualitative difference of the sentences imposed.

In response to petitioners initial appeals regarding the validity of the death penalty statutes in Utah, this court relied on decisions rendered by the United States Supreme Court issued in 1976. Subsequent decisions have further added to the mosaic, from which emerges the pattern of basic constitutional doctrine. The Utah statutory plan for imposition of the death penalty does not conform with the minimal requirements of the United States Supreme Court. My concurring and dissenting opinion in *State v. Brown*, Utah, No. 15481, February 1980, sets forth in detail my reasons for this conclusion.