STATE of Utah, Plaintiff and Appellee,

v.

James Louis HOLLAND, Defendant
and Appellant.

No. 910352.

Supreme Court of Utah.

Jan. 13, 1994.

R. Paul Van Dam, Atty. Gen., Charlene Barlow, Asst. Atty. Gen., Salt Lake City, for State of Utah.

Elliott Levine, West Valley City, for James Holland.

STEWART, Associate Chief Justice:

This is an appeal from a sentence of death imposed after a second penalty hearing in a capital homicide case. Defendant's first death sentence was vacated on appeal by this Court. For the reasons stated below, defense counsel is disqualified from representing defendant in this case. The Court will appoint new counsel to represent defendant in further proceedings on this appeal.

Defendant James Holland pleaded guilty to capital homicide and was sentenced to death. This Court affirmed his conviction in *State v. Holland*, 777 P.2d 1019 (Utah 1989) (*Holland I*), but vacated the death sentence because the trial court incorrectly applied the principles set forth in *State v. Wood*, 648 P.2d 71 (Utah 1981), that govern when the death penalty can be lawfully imposed. That error was not raised by defense counsel either in the trial court or on appeal, but because of the fundamental nature of the error, we addressed it sua sponte and remanded the matter for a new penalty hearing.

At the second penalty hearing, defense counsel introduced no new evidence pertaining to the appropriate punishment. He merely submitted to the trial judge the transcript from the first penalty hearing. He offered no argument either in countering arguable factual propositions urged by the prosecution in support of the death penalty or in arguing that life imprisonment rather than death was the appropriate penalty. The trial judge imposed a death sentence for the second time. Holland appeals from that sentence. On this appeal, he argues that his guilty plea was entered illegally because he was incompetent at the time he pleaded guilty. Holland also challenges the constitutionality of part of the capital homicide statute. He does not, however, challenge the imposition of the death penalty under the standards established in *State v. Wood* and *Holland I*.

I.

We do not reach the merits of Holland's claims because during the pendency of this appeal, defense counsel breached his duty of loyalty to Holland in violation of defense counsel's duty under the Sixth Amendment to the United States Constitution. Therefore, defense counsel must be disqualified from further participation in this case.

Elliott Levine is the Summit County public defender and has represented Holland from the beginning in this case. Levine was also appointed to defend Von Lester Taylor in an unrelated capital homicide case. After Levine filed this appeal in Holland's case, Levine called Holland as a witness to testify at Taylor's penalty hearing. Levine wanted to question Holland concerning his own criminal acts and background so that the jury could compare Holland's background and criminal activities with those of Taylor. The purpose of the testimony was to demonstrate that, when compared to Holland, Taylor did not deserve the death penalty. The State objected to Holland's testifying in the Taylor case, and the trial court excluded the testimony. Taylor was sentenced to death, and an appeal was taken in which Levine asserted that the trial court erred in not allowing Holland's

testimony. In a brief filed in this Court in the Taylor case, Levine argued that the trial court erred in excluding Holland's testimony, which would have been used as a basis for arguing to the jury that a person, such as Holland, "who has committed multiple murders, has been incarcerated for nearly his whole life, comes from an abusive childhood, and who has little, if any remorse ... *is a prime candidate for the death penalty while [Taylor is] not.*"

In Taylor's appeal to this Court, the State moved to disqualify Levine from representing both Taylor and Holland on the ground that Levine's statement in the Taylor brief that "Holland is a prime candidate for the death penalty" created an adverse relationship between Levine and Holland that required his disqualification under Rule 1.7(b) of the Utah Rules of Professional Conduct.[1] The State also argued that Levine violated Rule 1.8(b) of the Utah Rules of Professional Conduct by attempting to use information about Holland and his conduct to Holland's disadvantage and the advantage of another.[2]

On September 23, 1993, the Court entered an order disqualifying Levine from further participation in the Taylor case on the ground that Levine had breached the Utah Rules of Professional Conduct.

## II.

Although the State has not moved to disqualify Levine in this case, the issue of his qualification is unavoidable. Therefore, we address sua sponte the issue of whether Levine should be disqualified from representing Holland in the proceedings before this Court.

 Critical to the attorney-client relationship and the integrity of judicial proceedings is an attorney's duty to represent the interests of a client with zeal and loyalty.

The duty of loyalty is so essential to the proper functioning of the judicial system that its faithful discharge is mandated not only by the Rules of Professional Conduct, but also, in criminal cases, by the Sixth Amendment right of a criminal defendant to the effective assistance of counsel. *United States v. Cronic,* 466 U.S. 648, 656–57, 104 S.Ct. 2039, 2045–46, 80 L.Ed.2d 657 (1984); *Von Moltke v. Gillies,* 332 U.S. 708, 725–26, 68 S.Ct. 316, 324–25, 92 L.Ed. 309 (1948) (plurality opinion). The faithful discharge of that duty is a vital factor both in uncovering and making clear to a court the truth on which a just decision depends and in protecting the rights of persons charged with a crime. In almost all cases, defendants are wholly dependent on the dedication of their attorneys to protect their interests and to ensure their fair treatment under the law. In *Von Moltke v. Gillies,* 332 U.S. 708, 725–26, 68 S.Ct. 316, 324–25, 92 L.Ed. 309 (1948) (plurality opinion), Justice Hugo Black wrote:

*The right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the interests of his client.... Undivided allegiance and faithful, devoted service to a client are prized traditions of the American lawyer. It is this kind of service for which the Sixth Amendment makes provision. And nowhere is this service deemed more honorable than in case of appointment to represent an accused too poor to hire a lawyer, even though the accused may be a member of an unpopular or hated group, or may be charged with an offense which is peculiarly abhorrent.*

(Emphasis added.)

 At a minimum, an attorney's duty of loyalty to his or her client requires the attorney to refrain from acting as an advocate against the client, even in a case unrelat-

1. Rule 1.7(b) states:
 A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person or by the lawyer's own interest, unless:
 (1) The lawyer reasonably believes the representation will not be adversely affected; and
 (2) Each client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation to each client of the implications of the common representation and the advantages and risks involved.

2. Rule 1.8(b) states, "A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation."

ed to the cause for which the attorney is retained. *See United States v. Cronic*, 466 U.S. 648, 666, 104 S.Ct. 2039, 2050–51, 80 L.Ed.2d 657 (1984); *Osborn v. Shillinger*, 861 F.2d 612, 626–27 (10th Cir.1988); *see also* Utah R. Professional Conduct 1.7 cmt. An attorney who acts upon a belief that his client should be convicted fails "to function in any meaningful sense as the Government's adversary." *Cronic*, 466 U.S. at 666, 104 S.Ct. at 2051. If an attorney's loyalty is compromised because he believes that his client should be convicted or because he is influenced by a conflict in loyalties to other defendants, third parties, or the government, the law cannot tolerate the risk that the attorney will fail to subject the prosecution's case to the kind of adversarial challenge necessary to ensure that the accused receives the effective assistance of counsel as guaranteed by the Sixth Amendment. *Id.* at 659, 104 S.Ct. at 2047. In *Osborn v. Shillinger*, 861 F.2d 612, 625 (10th Cir.1988), the United States Court of Appeals for the Tenth Circuit stated, "When the trial or sentencing process is rendered unreliable because it has clearly lost its adversary character, the Sixth Amendment violation is clear." The *Osborn* court held that defense counsel's failure to discover family background witnesses and medical history that would have provided mitigating evidence constituted the denial of the effective assistance of counsel in the penalty phase of a capital case.

On facts similar to those now before this Court, the Tenth Circuit Court of Appeals stated in *Osborn:*

> Counsel's actions in regard to sentencing even more clearly indicate the abandonment of his duty of loyalty. At the federal habeas hearing, Osborn's counsel admitted that he had made public statements to the effect that Osborn was not amenable to rehabilitation, and conceded that such statements "probably" did not help his client's chances to avoid the death penalty.

*Id.* at 628. Also, during the time that his client's appeal was pending, the defense at-

torney in *Osborn* stated in a letter to a judge that, in essence, his client deserved the death penalty. On the issue of an attorney's duty of loyalty, the court stated:

> No particular reason for defense counsel's behavior is apparent, although he repeated many times that Osborn was an extremely difficult client, and that he had another very high profile capital case before Wyoming courts at the same time as this one. Whatever the reason, the record supports the district court finding that defense counsel turned against Osborn [the client], and that this conflict in loyalty unquestionably affected his representation. *A defense attorney who abandons his duty of loyalty to his client and effectively joins the state in an effort to attain a conviction or a death sentence suffers from an obvious conflict of interest. Such an attorney, like unwanted counsel, " 'represents' the defendant only through a tenuous and unacceptable legal fiction." Faretta v. California*, 422 U.S. 806 (1975). In fact, an attorney who is burdened by a conflict between his client's interests and his own sympathies to the prosecution's position is considerably worse than an attorney with loyalty to other defendants because the interests of the state and the defendant are necessarily in opposition.

*Osborn*, 861 F.2d at 629 (emphasis added). The court in *Osborn* set aside the defendant's conviction and sentence because he did not receive the effective assistance of counsel: The "process by which he pled and was sentenced to death was not adversarial, and therefore was unreliable." *Id.*

 Here, Levine took a position in the Taylor case that was directly contrary to Holland's interest when he sought to have Holland testify to establish a foundation for arguing that Holland was a *"prime candidate for the death penalty"* whereas Taylor was not. By asserting that Holland deserved the death penalty, Levine not only acted directly contrary to Holland's interest, but he aligned himself with the State's position.[3] *See id.*

---

3. We are aware that Holland might prefer the death penalty to a sentence of life imprisonment. Nevertheless, an attorney is not justified in asserting that his client deserves the death penalty, even if his client desires to have that penalty imposed. The statutes governing capital homicide prosecutions provide for a mandatory appeal in all death penalty cases. Those appeals

Although Holland's appeal is adversarial in form, we cannot countenance or condone representation of a defendant by an attorney who has stated in a public document that his client is "a prime candidate for the death penalty."

■ Given the direct and fundamental nature of the duty of loyalty, we will not inquire into the issue of whether the breach of that duty was prejudicial. We are obliged not to do so by our own precedent, *State v. Brown,* 853 P.2d 851, 857–58 (Utah 1992), and that of the United States Supreme Court, *Glasser v. United States,* 315 U.S. 60, 75–76, 62 S.Ct. 457, 467–68, 86 L.Ed. 680 (1942). In *Glasser,* the Supreme Court reversed a conviction because an attorney represented codefendants with adverse interests. The Court refused to inquire into the issue of prejudice because "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Id.* at 76, 62 S.Ct. at 467; *see also Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981); *Cuyler v. Sullivan,* 446 U.S. 335, 348–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980); *Holloway v. Arkansas,* 435 U.S. 475, 488–90, 98 S.Ct. 1173, 1180–82, 55 L.Ed.2d 426 (1978); *Government of Virgin Islands v. Zepp,* 748 F.2d 125, 138 (3d Cir.1984); *State v. Smith,* 621 P.2d 697, 699 (Utah 1980).

For the foregoing reasons, the Court disqualifies Levine from further representation of Holland. The Court will appoint new counsel to take over Holland's representation on this appeal. Appointed counsel may file additional briefing and request oral argument on all issues presently. before the Court. This ruling is concurred in by all members of the Court.

### III.

This part of the opinion represents only the views of Associate Chief Justice Stewart and Justice Durham. As such, this section does not represent the views of a majority of the Court.

Associate Chief Justice Stewart and Justice Durham concur in the above but believe that Levine's conduct as defense counsel requires further action by the Court. Levine has demonstrated such a fundamental and underlying misconception of the defense attorney's role that the death penalty should be set aside and the matter remanded for a new penalty proceeding. In addition, the district court should be directed to hold a hearing to determine whether Holland, prior to pleading guilty, was properly advised by Levine of the law, including the various degrees of homicide, his options with respect to pleading guilty, and the likely results of his options in view of the status of the evidence and the governing law.

The constitutional right to the effective assistance of counsel in a criminal case under both the state and the federal constitutions necessarily includes "the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 2045, 80 L.Ed.2d 657 (1984). When defense counsel fails to pursue an accused's cause with zeal and loyalty, "the process loses its character as a confrontation between adversaries, [and] the constitutional guarantee is violated." *Id.* at 656–57, 104 S.Ct. at 2045–46; *see also Von Moltke v. Gillies,* 332 U.S. 708, 725–26, 68 S.Ct. 316, 324–25, 92 L.Ed. 309 (1948) (plurality opinion). "It should be beyond cavil that an attorney who fails altogether to make any preparations for the penalty .phase of a capital murder trial deprives his client of reasonably effective assistance of counsel by any objective standard of reasonableness." *Blake v. Kemp,* 758 F.2d 523, 533 (11th Cir.), *cert. denied,* 474 U.S. 998, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985). The right to counsel guaranteed by the Sixth Amendment to the United States Constitution is the right to the

---

are to assure that all sentences of death are imposed in full and complete compliance with the law. A defendant's wish to be executed does not obviate that requirement and does not constitute a waiver of errors. Concededly, defense counsel is in a difficult position when a defen-

dant wants the death penalty to be imposed. Counsel may then have to inform the court of the client's wish while taking necessary action to ensure compliance with legal requirements. It is simply not permissible for the proceedings on appeal or in the trial court to be *pro forma.*

effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

An effective attorney "must play the role of an active advocate, rather than a mere friend of the court." *Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 835, 83 L.Ed.2d 821 (1985). Unless an attorney represents the interests of a client with zeal and loyalty, the adversarial system of justice cannot operate. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 648, 686, 104 S.Ct. 2039, 2063–64, 80 L.Ed.2d 657 (1984).

Levine failed to meet those standards in several respects. During the closing arguments at Taylor's penalty hearing, Levine made the following comments:

> In opening arguments I told you that the decision to do this [i.e., plead guilty] came as a result of long hours of conversation between myself and Mr. Taylor. Let me tell you a little bit about my approach as a defense attorney. And this stuck in my head last week, last Thursday, I think. I got home very late, walked in my house, and what happens to be on TV but LA Law, something I don't regularly watch. But I don't even know what the character was. She was talking to a judge or something and she was explaining to the judge an obligation as a criminal defense attorney, and that is to do what I can to get my client off. In my opinion that's a bunch of bull. You don't do yourself any good, I don't do my client any good and I don't do the system any good. I don't feel that is my task as a defense attorney. And I feel very sorry if that's how TV is portraying defense attorneys.

> My approach differs in that normally what I try and do, I talk to my client, I need to know whether or not they committed that crime. I also need to know

whether in the processing of that criminal through the system their constitutional rights were protected. And if that's the case then I feel it's my obligation to get that person to take the first step, and that is to come forth, admit their wrong doing, then to get them through the system in a sense that the appropriate punishment is imposed and they live with that punishment. That's exactly what I've done in Mr. Taylor's case. And that's where Mr. Taylor differs from the other individual [co-defendant] in this case.

Levine's view of his role as a defense attorney is inconsistent with the duties the law imposes on defense counsel. It is not the role of defense counsel to persuade a defendant to plead guilty because *counsel* concludes that the defendant committed a crime. Defense counsel's obligation is to explain the evidence against the defendant, the nature of all defenses that might be provable, all the various options the defendant has in pleading guilty or not guilty and going to trial, and the possible or likely consequences of those options. It is not defense counsel's responsibility or proper role to decide that a defendant deserves the death penalty. Should a defendant choose to contest the charges against him or her, it is counsel's obligation to require the State to prove its case beyond a reasonable doubt.

Certainly attorneys are bound to have private feelings about the clients they represent and their guilt or innocence, but it is their professional responsibility to set aside private feelings and judgments and vigorously argue the law and the facts in a light as favorable to the defendant as the law and facts permit. That, however, is not the role Levine assumes when he acts pursuant to his stated philosophy. Under that philosophy, defense counsel acts as an agent for the prosecution in ensuring that defendants take responsibility for their crimes (as Levine would adjudge the matter) and that punishment, as deemed appropriate by counsel, is meted out. As Levine stated it, it is his duty "to get that person [i.e., the defendant] to come forth [and] admit their wrong doing." [4]

---

**4.** We cast no aspersions on the proposition that confession is good for the soul from a religious

The practical effect of that philosophy is to nullify our adversarial system and to deny the defendant the effective assistance of counsel.

In reviewing Levine's performance in this case, we are left with the strong impression that his defense of Holland reflects Levine's erroneous theory of the role of a criminal defense attorney and his belief that Holland was a "prime candidate for the death penalty." We do not, and cannot, know on this record whether Holland's guilty plea was made after counsel carefully analyzed the law and the facts and laid out the options for Holland or whether Levine encouraged Holland to plead guilty to capital homicide on Levine's judgment that he was guilty of capital homicide.

Levine's serious errors and lack of zealous advocacy in both the first and second penalty hearings and on the first appeal are evidence that Levine put his philosophy into practice. In the first penalty hearing, Levine did not apprise the trial court of the standards that govern the imposition of the death penalty, nor did he object when the trial court improperly applied those standards. Even after the imposition of the death penalty, he failed to research the law with respect to the standards for imposing the death penalty and failed to argue in this Court that the trial court had failed to apply those standards. *State v. Holland,* 777 P.2d 1019 (Utah 1989).

In addition, at the second penalty hearing, Levine simply submitted the transcript from the first hearing without offering any argument that a life sentence was appropriate, or that there were mitigating circumstances (and there were), or that, even apart from the mitigating and aggravating circumstances, the death sentence was not appropriate under all the circumstances. Levine sought to excuse his omission on the ground that Holland requested that no additional evidence be presented in the second penalty hearing. Nevertheless, Levine had an ethical obligation to present an argument in favor of a life sentence. It was not the intent

of this Court to remand this case for a *pro forma* proceeding in which the death penalty should be automatically reimposed. In truth, there was no adversarial proceeding in the second penalty hearing.

Levine's failure to take an active role in the proceedings violated his duty to assure that the trial court correctly understood the facts and had them in proper perspective before deciding whether to impose the death penalty or a life sentence. The prosecutor argued some of the facts to the trial court as if the facts were uncontestable that Holland had pleaded guilty to a cold-blooded, intentional killing. In arguing for the death sentence, the prosecutor presented parts of the evidence that Holland gave the police but ignored other parts. He argued:

> On July 4th or 5th . . . the defendant found himself here in Summit County. He had caught a ride. He was hitchhiking. A fellow by the name of Sam Patt gave him a ride from an area in Idaho. Mr. Patt wants to stop for the evening and tells the defendant, it's time to get out, that the ride is over. The defendant does not want to get out at that location and pulls his revolver and shoots five times at Mr. Patt.

Although Holland confessed to the killing and demonstrated a willingness to answer questions with no apparent concern for the degree to which they incriminated him, he maintained from the beginning that he had no intention of killing Patt and that he fired the gun that killed Patt during a struggle which occurred when Patt grabbed for the gun. Dr. Todd Grey's testimony was consistent with the proposition that the killing occurred during a struggle between Holland and Patt. The physical evidence that several wild shots had been fired was also consistent with that proposition.

Those facts were not argued to the trial court by Levine. Indeed, he offered no argument against imposition of the death penalty, either factually or under the governing legal standards. After the trial judge asked

---

and moral perspective. However, while defense counsel need not discourage a guilty plea in appropriate cases, defense counsel must be wary lest a defendant, acting out of a moral sense of

guilt for having committed a crime, pleads guilty to a degree of crime that is not appropriate with respect to the acts committed.

Levine if he had a response to the prosecutor's argument, he stated:

> Your honor, I waive any response. And once again, I think the Court has sufficient information in its possession at this point in time to follow the guidelines of *State v. Wood* and to render a just decision in this case as far as the sentencing goes. We would submit it, your honor.

Levine's failure to respond allowed the trial court to assume that the prosecutor's characterization of the facts was a true and complete version of those facts, even though all the facts that had been developed showed that the fatal shot was fired while Holland and the victim fought over a gun. No argument was offered with respect to the application of the *Wood* standards.

In sum, the penalty hearing was adversarial in form only. As the Tenth Circuit stated in *Osborn v. Shillinger*, the "process by which he [the defendant] pled and was sentenced to death was not adversarial, and therefore not reliable." 861 F.2d 612, 629 (10th Cir.1988).

While it is not possible to tell to what extent Holland's guilty plea was tainted by Levine's erroneous view of his role as defense counsel, the validity of the plea is questionable. It is clear that there was no zealous advocacy at the penalty hearing; indeed, there was no advocacy at all. We would remand the case to determine whether Holland received the kind of legal advice to which he was entitled before pleading guilty, and if he did not, the plea should be set aside. In any event, we would vacate the death penalty and remand for a new penalty hearing with new defense counsel.

ZIMMERMAN, C.J., and HALL and HOWE, JJ., concur only in parts I and II.

DURHAM, J., concurs in parts I, II, and III.

HALL, J., acted on this case prior to his retirement.