STATE of Utah, Plaintiff and Appellee,

v.

James Louis HOLLAND, Defendant
and Appellant.

No. 910352.

Supreme Court of Utah.

June 21, 1996.

Rehearing Denied June 21, 1996.

R. Paul Van Dam, Atty. Gen., J. Frederic Voros, Jr., Asst. Atty. Gen., Salt Lake City, for plaintiff.

J. Bruce Savage, Park City, for defendant.

AMENDED OPINION

RUSSON, Justice:

James Louis Holland appeals from a sentence of death imposed following a second penalty hearing in a capital homicide case. We reverse and remand.

FACTS

Because the issues involved in this appeal relate solely to events subsequent to Holland's arrest in this matter, we recite only the facts that are pertinent to those issues. A full discussion of the facts concerning the events leading up to and including Holland's arrest can be found in *State v. Holland,* 777 P.2d 1019, 1020–21 (Utah 1989) *(Holland I ).*

On July 14, 1987, James Louis Holland was charged by information with murder in the first degree, a capital offense, in violation of section 76–5–202(1)(h) of the Utah Code, and two counts of theft. At his arraignment on September 1, 1987, Holland pleaded guilty to

one count of capital homicide and the two theft counts were dismissed. Following a sentencing hearing on September 17, 1987, Holland was sentenced to death.

Holland appealed, challenging both his conviction and his sentence. In *Holland I,* this court affirmed his conviction but vacated the death sentence because the trial court improperly applied the principles laid out in *State v. Wood,* 648 P.2d 71 (Utah 1982), *cert. denied,* 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982), and we remanded the case for a second penalty hearing. *Holland I,* 777 P.2d at 1028.

Following remand, Holland moved to withdraw his guilty plea on the ground that he was not competent at the time he made the plea. At a hearing on Holland's motion, the trial court heard testimony from two expert witnesses, Dr. Lebegue and Dr. Howell, who disagreed as to whether Holland was competent at the time of his initial guilty plea. The parties also addressed the testimony of another expert witness, Dr. DeCaria, who had testified at Holland's first penalty hearing in September 1987 that Holland was not competent at the time he made his plea. The State further presented the report of an expert in an unrelated case involving Holland which stated that the expert "could not find clear and convincing evidence" that Holland was mentally ill in December 1988. The trial court also heard testimony from James Bell, one of the officers who arrested Holland in this matter, whose testimony contradicted certain aspects of Dr. Lebegue's testimony. The trial court subsequently denied Holland's motion, concluding that Holland was competent at the time he entered his initial plea in this matter.

At the second penalty hearing, Holland's counsel, Elliott Levine, introduced no new evidence regarding the appropriate punishment but merely submitted the transcript from the first penalty hearing to the trial court. Moreover, Levine did not counter the factual propositions urged by the prosecution in support of the death penalty or argue that life imprisonment rather than death was the appropriate penalty. The trial judge imposed a death sentence for the second time.

Holland again appealed. *State v. Holland,* 876 P.2d 357, 358 (Utah 1994) (*Holland II* ). While that appeal was pending, Levine, who had been appointed to defend Von Lester Taylor in an unrelated capital homicide case, called Holland as a witness to testify at Taylor's penalty hearing. *Id.* at 358–59. Levine sought to question Holland about his background and criminal acts so the jury could compare Taylor's background and criminal activities with those of Holland. *Id.* at 358. Levine sought to use this testimony to demonstrate that when compared to Holland, Taylor did not deserve the death penalty. *Id.* The State objected to allowing Holland to testify in the *Taylor* case, and the trial court excluded the testimony. *Id.* Taylor was subsequently sentenced to death, and an appeal was taken in which Levine argued that the trial court erred in excluding Holland's testimony. *Id.* at 358–59. On appeal in Taylor's case, Levine argued that the trial court erred in excluding Holland's testimony on the ground that it should have been permitted to support an argument to the jury that a person such as Holland, "who has committed multiple murders, has been incarcerated for nearly his whole life, comes from an abusive childhood, and who has little, if any remorse ... *is a prime candidate for the death penalty while [Taylor is] not.*" [1] *Id.* at 359 (alterations in original).

In *Holland II,* this court did not reach the merits of the case but instead disqualified Levine on the ground that he breached his duty of loyalty to Holland in contravention of the Sixth Amendment to the United States Constitution, and assigned Holland new counsel. *Id.* at 361.

The present appeal is brought by Holland's new counsel, who argues that the trial court erred in denying Holland's motion to with-

---

**1.** In Taylor's appeal to this court, the State moved to disqualify Levine from representing both Taylor and Holland on the ground that this statement required his disqualification under Rules 1.7(b) and 1.8(b) of the Utah Rules of Professional Conduct. *Id.* at 359. On Septem-

ber 23, 1993, the court entered an order disqualifying Levine from further participation in the Taylor case on the ground that Levine had breached the Utah Rules of Professional Conduct. *Id.*

draw his guilty plea and that Levine rendered ineffective assistance of counsel.[2]

## ANALYSIS

Holland argues that the trial court erred in denying his motion to withdraw his guilty plea on the ground that he was not competent to make such a plea. The State responds that the trial court correctly determined that Holland was competent when he made his guilty plea and therefore the trial court's ruling should be upheld.

We review a trial court's denial of a motion to withdraw a guilty plea under an "abuse of discretion" standard, incorporating the "clearly erroneous" standard for the trial court's findings of fact made in conjunction with that decision. *State v. Blair*, 868 P.2d 802, 805 (Utah 1993). However, the ultimate question of whether the trial court strictly complied with constitutional and procedural requirements for entry of a guilty plea is a question of law that is reviewed for correctness. *See generally State v. Pena*, 869 P.2d 932, 936, 938 (Utah 1994); *Willett v. Barnes*, 842 P.2d 860, 861 (Utah 1992).

In determining whether a defendant is competent to plead guilty, the trial court must consider "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez v. Moran*, 509 U.S. 389, 396, 113 S.Ct. 2680, 2685, 125 L.Ed.2d 321 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (per curiam)). In the present case, the dispute over Holland's competency does not concern whether he lacked a rational and factual understanding of the proceedings, but solely focuses on whether, at the time of his guilty plea, Holland lacked the ability to consult with his attorney in a reasonable and rational fashion.

At the time the trial court denied Holland's motion to withdraw his guilty plea, it had before it the following expert testimony on which to base its decision: Dr. Lebegue's testimony from the hearing on that motion, Dr. Howell's testimony from that hearing, and Dr. DeCaria's testimony from the first penalty hearing.[3] After receiving the above evidence, the trial court concluded that Holland was competent at the time he made his initial guilty plea, basing its conclusion on two factors: (1) a statement from this court's opinion in *Holland I* that Holland "fully knew and understood the nature of the proceedings and charges against him and was competent to assist in the proceedings against him," 777 P.2d at 1024, and (2) the trial judge's own recollection that at the time he accepted Holland's guilty plea, he "felt that Mr. Holland was very articulate." Consequently, the trial court decided that Holland was competent at the time he made his initial guilty plea and denied his motion to withdraw that plea.

---

**2.** Holland's new counsel additionally raises the following claims: (1) Holland's initial guilty plea was not knowingly and voluntarily made; (2) the trial court did not properly apply the *Wood* standards in the second penalty hearing; and (3) Utah's death penalty scheme violates the Eighth and Fourteenth Amendments of the United States Constitution and article I, sections 7 and 9 of the Utah Constitution. However, given our disposition of this case on the trial court's denial of Holland's motion to withdraw his guilty plea and Levine's ineffectiveness, we need not address these other issues.

**3.** The trial court also had before it a report prepared by Dwight Petersen, a clinical psychologist, in an unrelated case in Idaho in December 1988. That report stated that Dr. Petersen "could not find clear and convincing evidence that [Holland] is mentally ill at this time." However, not only did the report use a different standard than is applicable here, "clear and con-

vincing" as opposed to "a reasonable medical certainty," but it also expressed only Dr. Petersen's opinion that Holland was competent in December 1988; it expressed no opinion as to whether Holland was competent in September 1987 when he made his guilty plea in this case. Thus, Dr. Petersen's report is not germane to the trial court's determination concerning Holland's competency at the initial plea hearing.

In addition, the trial court heard the testimony of James Bell, one of the officers who arrested Holland in this matter. However, Bell's testimony was used only to contradict certain aspects of Dr. Lebegue's testimony. Bell did not testify as to Holland's competency either at the time he was arrested or at the time of his initial guilty plea. Bell's testimony likewise does not directly support the trial court's conclusion that Holland was competent to enter a guilty plea.

After reviewing the evidence available to the trial court, we conclude that the trial court erred in determining that Holland was competent at the time he made his initial guilty plea. At the hearing on the motion to withdraw Holland's guilty plea, Dr. Lebegue stated that he had reviewed numerous documents and interviewed Holland on a number of occasions. On the basis of information gathered from these documents and interviews, Dr. Lebegue testified that in September 1987, when Holland initially pleaded guilty in this matter, Holland "suffered from a mental illness that is known as bipolar disorder with mixed features." Dr. Lebegue later referred to Holland's condition as "manic depressive illness." He further testified that the illness "rendered [Holland] incompetent to enter the plea in September of 1987" due to "impulsivity, poor judgment, and the suicidality [sic] that he expressed at that time." Specifically, Dr. Lebegue testified that Holland's incompetency was reflected in his inability "to assist his counsel in his defense." *See* Utah Code Ann. § 77–15–2 (1982).[4] Finally, Dr. Lebegue explained that although he could not verify to a reasonable medical certainty that Holland was incompetent in a November 1987 letter to the court, later interviews confirmed his initial opinion that Holland suffered from "bipolar, or so-called manic/depressive, illness with mixed features, elevated irritable mood, high energy, as well as suicide and depression." In short, Dr. Lebegue's testimony does not support the trial court's conclusion that Holland was competent to enter his initial guilty plea.

Similarly, Dr. DeCaria's testimony from the first penalty hearing indicates that Holland was incompetent at the time he pleaded guilty and does not support the trial court's conclusion to the contrary. Specifically, Dr. DeCaria testified as follows: "I have an opinion about Mr. Holland's competency to enter a plea in this case, and I have great doubt, grave doubt, in my own mind, that he is or was competent to enter a plea." Dr. DeCaria further explained that he based his opinion on Holland's desire to find "a way out" and the fact that he viewed death "as a way of obtaining that relief."

On the other hand, in a report which Dr. Howell filed in relation to this case in November 1987, he opined that although Holland may "have had impaired ability at the time of the crime," he was "competent to make a decision to plead guilty." However, at the hearing on Holland's motion to withdraw his guilty plea, even Dr. Howell admitted that there was a question as to Holland's "ability to aid in his own defense in a rational and factual manner as set forth by *Duskie* [sic]." Dr. Howell also testified that he was "less certain" and "more cautious" as to whether Holland was competent to aid his attorney in his own defense at the time he entered his guilty plea. Thus, Dr. Howell's testimony neither persuasively supports nor opposes the trial court's conclusion regarding Holland's competency. In sum, it is readily apparent that *none* of the expert testimony discussed at the hearing on Holland's motion to withdraw his guilty plea directly supports the trial court's conclusion that Holland was competent at the time he initially pleaded guilty.

Furthermore, the reasons given by the trial court for its determination do not support its conclusion. First, the trial court erred in relying on the statement made by this court in *Holland I* that Holland "was competent to assist in the proceedings against him." 777 P.2d at 1024. After making that statement, this court proceeded to instruct the trial court that if, upon remand, there were any question as to defendant's competence, the trial court should hold a hearing on the point because "a death penalty may be imposed only if there is full compliance with the law in every particular." *Id.* In making our ruling, we noted that we did not know what decision the trial court would make on remand but cautioned it to "proceed with proper circumspection." *Id.* We certainly did not anticipate that the trial court

---

4. At the time Holland entered his guilty plea, Utah Code Ann. § 77–15–2 provided:

For the purposes of this chapter, a person is incompetent to proceed if he is suffering from a mental disease or defect resulting either:

(1) In his inability to comprehend the nature of the proceedings against him or the punishment specified for the offense charged; or

(2) In his inability to assist his counsel in his defense.

would ignore the additional evidence presented on remand to accept the above statement by this court. In light of the compelling nature of that evidence, the trial court·erred by doing so.

■ Second, the trial judge's recollection that he was satisfied that Holland was articulate prior to accepting his guilty plea is not supported by the record. In fact, all Holland ever said prior to the trial court's accepting his guilty plea was "yes, sir," "no, sir," and "guilty." This hardly seems a basis from which the trial court could ascertain Holland's articulateness. Moreover, although a defendant's demeanor "may ... constitute relevant evidence on the issue of competency," *Lafferty v. Cook*, 949 F.2d 1546, 1555 (10th Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1942, 118 L.Ed.2d 548 (1992), "it cannot be relied upon to dispense with a hearing on that very issue." *Pate v. Robinson*, 383 U.S. 375, 386, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966).

In addition, the trial court's attempt to make a nunc pro tunc determination of Holland's competency at a hearing subsequent to his guilty plea is clearly contrary to the approach directed by the United States Supreme Court in *Dusky* and its progeny. As stated in *Dusky:*

> In view of the doubts and ambiguities regarding the legal significance of the psychiatric testimony in this case and the resulting difficulties of retrospectively determining the petitioner's competency as of more than a year ago, we reverse the judgment of the Court of Appeals affirming the judgment of conviction, and remand the case to the District Court for a new hearing to ascertain petitioner's present competency to stand trial, and for a new trial if petitioner is found competent.

362 U.S. at 403, 80 S.Ct. at 789; *accord Pate*, 383 U.S. at 387, 86 S.Ct. at 843 (holding that competency determination must be made concurrently with disposition before the trial court). In *Godinez v. Moran*, the Supreme Court held that *Dusky* equally applies to guilty plea cases. *Godinez*, 509 U.S. at 397–98, 113 S.Ct. at 2686.

Likewise, numerous other courts have applied the *Dusky* rationale and concluded that an attempt by the trial court to retrospectively determine a defendant's competency is improper. *See, e.g., Griffin v. Lockhart*, 935 F.2d 926, 931 (8th Cir.1991); *United States v. Cole*, 813 F.2d 43, 47–48 (3d Cir.1987); *Blunt v. United States*, 389 F.2d 545, 549 (D.C.Cir. 1967); *Leonard v. State*, 658 P.2d 798, 800 (Alaska.Ct.App.1983); *Scott v. State*, 420 So.2d 595, 598 (Fla.1982); *People v. Murphy*, 160 Ill.App.3d 781, 112 Ill.Dec. 295, 305, 513 N.E.2d 904, 914, *appeal denied*, 117 Ill.2d 550, 115 Ill.Dec. 406, 517 N.E.2d 1092 (1987); *Hayden v. Commonwealth*, 563 S.W.2d 720, 723 (Ky.1978); *Commonwealth v. Hill*, 375 Mass. 50, 375 N.E.2d 1168, 1175 (1978); *People v. Cartagena*, 92 A.D.2d 901, 459 N.Y.S.2d 896, 897 (1983).

■ We conclude that the same approach is proper in the case before us. When there is a "substantial question of possible doubt" as to a defendant's competency at the time of the guilty plea, *Hill*, 375 N.E.2d at 1175, as there surely was here, the trial court must hold a hearing to determine the defendant's *present* competency to make a plea of guilty. No matter how well-intentioned the effort, we fail to see how the trial court could, on the basis of the record before it, adequately determine whether Holland was competent three years earlier when he made his plea. Thus, the trial court's attempt to make such a nunc pro tunc determination must be reversed.

■ This is especially true in light of the ineffective assistance rendered by Levine throughout the proceedings. *See, e.g., Murphy*, 112 Ill.Dec. at 305, 513 N.E.2d at 914. To be effective, an attorney "must play the role of an active advocate, rather than a mere friend of the court." *Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 835, 83 L.Ed.2d 821 (1985). Unless an attorney represents the interests of a client with zeal and loyalty, the adversarial system of justice cannot operate. *Holland II*, 876 P.2d at 359 (citing *United States v. Cronic*, 466 U.S. 648, 656–57, 104 S.Ct. 2039, 2045–46, 80 L.Ed.2d 657 (1984); *von Moltke v. Gillies*, 332 U.S. 708, 725–26, 68 S.Ct. 316, 324, 92 L.Ed. 309 (1948) (plurality opinion)). At the very least, this duty of loyalty requires attorneys to refrain

from acting as an advocate against their clients, even in a matter unrelated to the case for which the attorney has been retained. *See Holland II,* 876 P.2d at 359–60.

> If an attorney's loyalty is compromised because he believes that his client should be convicted or because he is influenced by a conflict in loyalties to other defendants, third parties, or the government, the law cannot tolerate the risk that the attorney will fail to subject the prosecution's case to the kind of adversarial challenge necessary to ensure that the accused receives the effective assistance of counsel as guaranteed by the Sixth Amendment.

*Id.* at 360.

■ Applying this law to the case at bar, it is readily apparent that Levine failed to function as effective counsel for Holland. Among other things, it is unclear from the record before us whether Levine carefully analyzed the law and the facts and laid out the options for Holland prior to Holland's initial guilty plea hearing or whether he simply encouraged Holland to plead guilty to capital homicide on the basis of his own judgment that Holland was guilty of capital homicide. Under such circumstances, we are unable to say that Levine represented Holland's interests with zeal and loyalty. *See id.* at 359; *see also Cronic,* 466 U.S. at 656–57, 104 S.Ct. at 2045–46.

■ In addition, Levine took a position in the *Taylor* case that was directly contrary to Holland's interest when he sought to have Holland testify to establish a foundation for arguing that Holland was a *"prime candidate for the death penalty"* whereas Taylor was not. *Holland II,* 876 P.2d at 359. By asserting that Holland deserved the death penalty, Levine not only acted directly contrary to Holland's interest, but he aligned himself with the State's position. These actions also clearly render Levine's performance as Holland's counsel deficient according to *Strickland* standards.

■ We need not examine whether such performance resulted in prejudice to Holland. "Once the Court conclude[s] that [the defendant's] lawyer had an actual conflict of interest, it [shall] refuse to indulge in nice calculations as to the amount of prejudice attributable to the conflict. The conflict itself demonstrate[s] a denial of the 'right to have the effective assistance of counsel.'" *Cuyler v. Sullivan,* 446 U.S. 335, 349, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980) (quoting *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467–68, 86 L.Ed. 680 (1942)); *see also Wood v. Georgia,* 450 U.S. 261, 271–72, 101 S.Ct. 1097, 1103–04, 67 L.Ed.2d 220 (1981); *Holloway v. Arkansas,* 435 U.S. 475, 488–90, 98 S.Ct. 1173, 1180–82, 55 L.Ed.2d 426 (1978); *Government of Virgin Islands v. Zepp,* 748 F.2d 125, 138–39 (3d Cir.1984); *State v. Smith,* 621 P.2d 697, 699 (Utah 1980). It is sufficient to hold that under these circumstances, Levine's representation of Holland cannot possibly be regarded as the effective assistance of counsel. Accordingly, given the Supreme Court's holding in *Dusky* as well as Levine's ineffectiveness throughout the proceedings, the trial court's attempt to make a nunc pro tunc determination regarding Holland's competency at his initial guilty plea hearing must be reversed.

Finally, Holland urges us to reverse on the ground that at the second penalty hearing, Levine failed to present any new mitigating evidence or counter the evidence offered by the State. The State responds that Levine's conduct at the penalty hearing was not defective because he was acting on the instructions of Holland. On the record at the second penalty hearing, Levine informed the court that his client had instructed him to submit the matter to the judge on the sole basis of the transcript of the first penalty hearing. However, because we reverse Holland's conviction on the above grounds, we need not, and therefore decline to, address this issue.

## CONCLUSION

Holland's conviction is reversed, and this matter is remanded to the trial court for a new hearing to determine Holland's competency to plead guilty and, if he is found competent, for a new arraignment.

STEWART, Associate C.J., and DURHAM, J., concur.

HOWE, Justice, dissenting:

I dissent. I cannot agree that the trial court abused its discretion in denying defendant's motion to withdraw his guilty plea.

The majority concedes that Holland did not lack a rational and factual understanding of the proceedings against him but then erroneously concludes that at the time he entered his guilty plea, he "lacked the ability to consult with his attorney in a reasonable and rational fashion," as required by *Godinez v. Moran*, 509 U.S. 389, 396, 113 S.Ct. 2680, 2685, 125 L.Ed.2d 321, 330 (1993). The majority relies entirely on the expert testimony which was before the trial court but gives no weight to other evidence which supports the trial court's finding of competency. In fact, as I will later point out, there is no evidence that Holland lacked the ability to consult with his lawyer with a reasonable degree of rational understanding.

Holland has spent most of his adult life in prison. He was first convicted of armed robbery in Florida, where he served five years. Following his release, he killed a man in Iowa, where he served another twenty-two years. After killing the victim in the instant case but prior to his arrest, he committed another murder in Idaho. This background of criminal conduct explains what he said to Detective James Bell, who transported Holland from Florida to Utah to stand trial. Bell testified that Holland told him:

> He was tired of hurting people and tired of killing people. And if they ever let him back out of prison again, he would continue to kill people. And he needed it to stop, and the only way it was going to stop is if they were going to lock him up and keep him locked up. And he knew [that a sentence of] Life was not [going] to keep him [in prison] for life. And the only way to resolve it was to execute him.

He told Bell that he intended to plead guilty to the Utah murder charge. When Bell suggested that people would try to talk him out of pleading guilty, he responded: "They can try, but I am not going to talk to them. I'll go back and I'll plead guilty." Bell further testified that during the trip, defendant was "very straightforward with his answers," had no difficulty communicating, was very calm,

did not appear to be impulsive, and did not exhibit "pressured speech." He showed no signs of depression, and in response to a question, he stated that he was not suicidal. With that background of criminal conduct, it should not be surprising or in any way indicate incompetency that Holland concluded he could not control himself outside of prison.

The majority relies heavily on the testimony of Dr. Lebegue that although Holland was able "to comprehend the nature of the proceedings against him" and "the punishment specified for the offense charged," he was "unable to assist his attorney in his defense." However, Dr. Lebegue's opinion rested largely upon Holland's "immediate desire to plead guilty to a capital offense." His "hasty and fairly pressured and impulsive decision to proceed" evidenced "his impaired ability to consult with counsel." The trial court, however, was not obliged to agree with Dr. Lebegue's conclusion that Holland's decision to plead guilty was impulsive, hasty, or not thoughtfully reasoned. At the time the trial court received Holland's guilty plea, the court told him:

> I don't want to rush you. If you want some time to think about it, just say so. Are you prepared at this time to make a decision, or do you wish to wait and confer with counsel and get back to the court?

Holland replied: "I have already made the decision. I have thought about it. I will just go with the court, I don't need a jury." This statement comports entirely with what he told Detective Bell, that he had thought about and decided to plead guilty even prior to his arrest in Florida. Furthermore, pleading guilty to first degree murder (now called aggravated murder) does not raise any inference of lack of competency. The defendant in *State v. Parsons*, 781 P.2d 1275, 1276 (Utah 1989), similarly pleaded guilty to first degree murder, and a jury imposed the death penalty. In a ruling on a subsequent petition for habeas corpus, we held that the defendant had not received ineffective assistance of counsel. *Parsons v. Barnes*, 871 P.2d 516, 524–25 (Utah), *cert. denied,* —— U.S. ——, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994).

The trial court also had the opportunity to observe Holland on several occasions when he was in court. On those court appearances, Holland's answers were not limited to "yes, sir" and "no, sir." For example, he had a lengthy colloquy with the court at the first penalty hearing when he objected to his own counsel's motion for a continuance for several weeks to give Dr. DeCaria more time to examine and evaluate him. On that occasion, defendant not only addressed the court at length, but discussed his objection with his counsel and Dr. DeCaria. In addition, at the time of entering his plea defendant read and signed an affidavit explaining in great detail the rights he was waiving and the consequences of his plea. He indicated to the court that he had read the affidavit, understood it, and signed it knowingly and willingly.

None of the three experts upon whom the majority relies testified as to any instance where Holland lacked the ability to consult with his attorney in a reasonable and rational fashion. Nor did his attorney who made the motion to allow Holland to withdraw his guilty plea ever testify or produce any evidence to that effect. There was no evidence that defendant was factually or rationally out of touch with the realities of the criminal proceedings. Unlike the defendant in *State v. Lafferty*, 749 P.2d 1239, 1246 (Utah 1988), who operated within a paranoid delusional system, and the defendant in *Dusky v. United States*, 295 F.2d 743, 749 (8th Cir.1961), *cert. denied*, 368 U.S. 998, 82 S.Ct. 625, 7 L.Ed.2d 536 (1962), who suffered from schizophrenia and visual hallucinations, Holland exhibited none of those characteristics. He was always well rooted in reality.

As the second ground for allowing Holland to withdraw his guilty plea, the majority finds that his attorney, Elliot Levine, rendered ineffective legal assistance. The majority somehow comes to that conclusion after acknowledging:

> [I]t is unclear from the record before us whether Levine carefully analyzed the law and the facts and laid out the options for Holland prior to Holland's initial guilty plea hearing or whether he simply encouraged Holland to plead guilty to capital

homicide on the basis of his own judgment that Holland was guilty of capital homicide.

With that statement, the majority then gratuitously assumes ineffectiveness without requiring any proof. The record is unclear as to what advice Levine gave Holland because no hearing was ever held to pursue that issue. We have always required defendants to produce evidence of ineffective assistance of counsel and have never assumed it as the majority does now. As mentioned earlier, we held in *Parsons*, 871 P.2d at 524–25, that counsel's advice to plead guilty to a charge of first degree murder was not ineffective assistance.

No one disputes that Levine used poor judgment when in the Taylor case he attempted to point to Holland as someone who deserved the death penalty while Taylor did not. I agree with the majority that that conduct breached his obligation of loyalty to Holland at a time when this appeal was pending in this court. The State wisely brought that breach to our attention, and we ordered Levine to withdraw as Holland's counsel on appeal. *State v. Holland*, 876 P.2d 357, 361 (Utah 1994). However, that conduct could in no way have tainted or affected Levine's advice to Holland when he entered the guilty plea several years earlier.

In conclusion, in view of all the facts, there is ample support to sustain the trial court's denial of Holland's motion to withdraw his guilty plea. There is evidence of Holland's competency at the time he entered his plea. There is no evidence that at that time Levine rendered ineffective assistance to Holland. I would affirm the trial court.

ZIMMERMAN, C.J., concurs.