STATE of Utah, Plaintiff and Appellee,

v.

Bill Franklin MARVIN, Defendant and Appellant.

No. 920440.

Supreme Court of Utah.

June 19, 1998.

**314**

Jan Graham, Attorney General, Kris C. Leonard, Assistant Attorney General, Todd A. Utzinger, Assistant Attorney General, Salt Lake City, for Plaintiff and Appellee.

Kent E. Snider, Ogden, for Defendant and Appellant.

1. Prior to 1991, the offenses defined by sections 76–5–202 and 76–5–203 of the Code were respectively called "murder in the first degree" and

ZIMMERMAN, Justice:

This is a direct appeal by the defendant, Bill Franklin Marvin, from his plea of guilty to second degree murder. Marvin claims that his trial attorney, John Caine, was ineffective when he advised Marvin to plead guilty as charged. Marvin also contends that his plea was not knowing and voluntary because the state failed to fulfill its part of the bargain when it did not intervene on his behalf in disposing of pending extradition proceedings. Finally, Marvin argues that his current counsel, Kent E. Snider, has a conflict of interest because he is associated with the Weber County Public Defender's Association, to which Caine also belongs. Snider has filed an *Anders* brief and has asked to withdraw as counsel. We find the *Anders* brief sufficient and, having independently examined the issues raised therein, find them to be wholly frivolous. Therefore, we grant Snider permission to withdraw from the appeal, and we affirm Marvin's conviction.

We first set forth the facts and procedural history of this case before turning to our analysis. In June of 1989, Marvin was charged with the murder of Richard Frances, which had been witnessed by several bystanders. After being given *Miranda* warnings, Marvin confessed to the murder. Caine, a Weber County public defender, was appointed to represent Marvin. Caine advised Marvin to plead guilty to second degree murder.[1] In exchange for Marvin's guilty plea, the state promised to remain silent during sentencing and to use its best efforts to facilitate the dismissal of pending extradition proceedings in Idaho and Tennessee. Upon entry of his guilty plea, Marvin received a sentence of five years to life in prison.

In November of 1989, Marvin filed a timely notice of appeal, but that appeal was dismissed because his counsel failed to file a brief. Marvin then filed a petition for habeas corpus, alleging that the state had failed to honor its plea agreement. The habeas court denied the petition but ordered the original

"murder in the second degree." *See* Utah Code Ann. §§ 76–5–202 & –203 (1995).

trial court to resentence Marvin nunc pro tunc to allow him to perfect his appeal. In August of 1992, Marvin was resentenced to five years to life. He again filed a timely notice of appeal, in which he alleged ineffective assistance of trial counsel as well as a failure by the state to fulfill the plea agreement.

Marvin's ineffective assistance claims came before this court for the first time in March of 1994. Due to the insufficiency of the record, we sua sponte remanded the case to the trial court pursuant to Rule 23B(a) of the Utah Rules of Appellate Procedure with instructions for it to conduct a hearing and take the evidence necessary to enter findings of fact with respect to certain aspects of Marvin's claims. The court held the 23B hearing in October of 1996 and entered findings of fact on November 4, 1996.

After the hearing, Snider, Marvin's appellate counsel, concluded he could not find a non-frivolous basis on which to appeal. Therefore, Snider filed a brief setting forth the arguments Marvin wished to raise, stating that these arguments are wholly frivolous, and requesting permission to withdraw. Snider filed this brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Clayton*, 639 P.2d 168 (Utah 1981), which require a criminal defendant's appointed counsel to follow certain steps upon concluding the defendant's appeal is without merit. *See Clayton*, 639 P.2d at 169. As required, Snider sent a copy of that brief to Marvin and moved to allow Marvin an additional twenty days to respond. Marvin submitted no additional brief.

The first issue we address is whether Snider has submitted a sufficient *Anders* brief. In *Clayton*, we set forth the requirements of a sufficient *Anders* brief. If those are satisfied, this court will then make an independent determination of whether the claims raised by the defendant and set forth in that brief are wholly frivolous. *See* 639 P.2d at 170. If we unanimously find that the issues presented are wholly frivolous, we will grant

counsel's request to withdraw and affirm the conviction. *See id.* Because we conclude that Snider's brief satisfies the requirements set forth in *Clayton*, we proceed to determine whether Marvin's claims are wholly frivolous.

Marvin's first claim is that Caine performed an inadequate investigation before advising him to plead guilty, thereby rendering his representation ineffective. In determining whether Marvin's counsel was constitutionally ineffective under the Sixth Amendment to the United States Constitution, we apply the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[2] *See also State v. Arguelles*, 921 P.2d 439, 441 (Utah 1996); *Taylor v. Warden*, 905 P.2d 277, 282 (Utah 1995); *Parsons v. Barnes*, 871 P.2d 516, 521 (Utah), *cert. denied*, 513 U.S. 966, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994). That test has been stated by this court as follows: " 'To prevail, a defendant must show, first, that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment and, second, that counsel's performance prejudiced the defendant.' " *Parsons*, 871 P.2d at 521 (quoting *Bundy v. Deland*, 763 P.2d 803, 805 (Utah 1988)). With regard to the application of this test, there are two important subsidiary principles. First, we " 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Id.* at 524 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). Second, because a defendant has the burden of meeting both parts of the *Strickland* test, it is unnecessary for this court to apply both parts where our inquiry reveals that one of its parts is not satisfied. *See id.*

■ We now apply the *Strickland* test to Marvin's claim that Caine performed an inadequate investigation. In doing so, we defer to the trial court's findings of fact entered after the Rule 23B hearing. *See State v.*

**2.** Snider did not advance in his *Anders* brief an ineffective assistance of counsel claim based upon the Utah Constitution. Therefore, we decide the issue only under the United States Constitution. *See State v. Arguelles*, 921 P.2d 439, 440 n. 2 (Utah 1996); *see also State v. Taylor*, 947 P.2d 681, 685 (Utah 1997)

*Taylor*, 947 P.2d 681, 685 (Utah 1997). Examining those findings of fact, we conclude that Caine's conduct did not fall below an objective standard of reasonableness. Caine advised Marvin to plead guilty primarily for two reasons: first, there was ample evidence to support a conviction for second degree murder; second, Caine believed there was a legitimate possibility that the state would attempt to enhance the charges to first degree murder based upon Marvin's prior convictions of felonies involving the threat or use of violence.[3] To elaborate, the state had several eye witnesses who would testify to seeing the stabbing, and one who would testify Marvin committed it with no provocation. Furthermore, Marvin had confessed to killing Frances without meaningful provocation. In reviewing that confession, Caine determined that it had been properly obtained and that a motion to suppress arguing Marvin's possible intoxication at the time the confession was taken would be unsuccessful. In Caine's opinion, there was ample evidence to support a conviction were the case to go to trial. Caine was also of the opinion that if the case were to go to trial, Marvin would need to testify in order to counter that evidence. However, Marvin's testimony would be that he could not remember the specific events which took place the night of the stabbing. The problems which would be faced in going to trial were a significant consideration in Caine's decision to advise Marvin to plead guilty and in Marvin's decision to do so.

■ Furthermore, the district court's findings show that Caine adequately investigated the possible defenses of self-defense, mental incapacity, and voluntary intoxication, and reached the reasonable professional conclusion that these defenses were unavailable. First, although there had apparently been some sort of disagreement between Marvin and his victim prior to the stabbing, Caine determined that self-defense was inapplicable because of a significant lapse in time between the disagreement and the stabbing. Furthermore, the eyewitness testimony would have been that Marvin was the aggressor. We conclude that Caine did not act unreasonably in concluding that self-defense was not an available defense.

■ With respect to a possible insanity defense, Caine asked Marvin whether he had ever been committed to a mental health facility or had mental health counseling. Although Caine did not order a medical examination, he saw no reason to do so given that Marvin appeared to be a "pretty savvy individual." We are not willing to second-guess Caine's judgment in this instance. To do so would be tantamount to requiring a mental health examination in every case regardless of the defendant's demeanor and lack of prior mental health history.

■ Finally, as to the potential availability of a diminished capacity or voluntary intoxication defense, it is true that Caine did not have any tests performed to indicate Marvin's level of intoxication at the time of the stabbing. However, there were a number of factors which caused Caine to believe that a voluntary intoxication defense would be unsuccessful. To prevail with a voluntary intoxication defense Caine would have needed to show that Marvin's intoxication deprived him of the capacity to form the mental state necessary for second degree murder. *See* Utah Code Ann. § 76–2–306. Caine thought it highly unlikely he would be able to prove this in light of the fact that there were witnesses who would testify that Marvin acted in a calm and deliberate manner. Second, Caine felt that a successful diminished capacity defense would have necessitated putting Marvin on the stand to testify. But as indicated above, Marvin had told Caine that he could not remember the specific events which took place on the night of the crime. And, Caine believed that allowing Marvin to testify would have led to the disclosure of Marvin's extensive criminal history and thus would have been more damaging than helpful.

In addition to the strength of the prosecution's case and the lack of available defenses, Caine legitimately feared that the state might use Marvin's prior violent crimes as a basis for enhancing the charge against him. Caine recalled seeing a document outlining

**3.** *See* Utah Code Ann. § 76–5–202(h) (Supp. 1989).

Marvin's prior criminal record before advising him to plead guilty and had discussed the facts surrounding Marvin's prior convictions with the prosecutor. In light of these circumstances, we are not willing to say that Caine's advice to plead guilty to second degree murder fell outside the range of acceptable performance.

Finally, the 23B findings show that Marvin obtained a meaningful benefit from his guilty plea. As illustrated by our decision in *Parsons*, the fact that a defendant obtains a meaningful benefit in exchange for a guilty plea is an additional indication that counsel acted reasonably in advising the defendant to accept the plea. *See* 871 P.2d at 524. In this case, although the state's promise to remain silent at sentencing was not especially important to Marvin, he was quite concerned about the extradition proceedings which were pending against him in Tennessee and Idaho. Marvin was especially worried that he would serve a lengthy prison sentence in Utah and then still be subject to extradition for his prior misdeeds in those states. Thus, the state's promise to use its best efforts to dispose of those proceedings was a meaningful benefit to him, and thereby illustrates the reasonableness of Caine's advice to plead guilty.

In conclusion, any argument that Caine committed error in advising Marvin to plead guilty to second degree murder is wholly frivolous. Therefore, we do not address the prejudice prong of the *Strickland* test.

■ We now turn to Marvin's second ineffective assistance of counsel claim. This claim is that Snider, his current counsel, has a conflict of interest as a result of his affiliation with the Weber County Public Defender's Association, and that this conflict renders his representation ineffective. It is well established that all criminal defendants have a right to conflict free counsel. *See United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In *State v. Holland*, 876 P.2d 357 (Utah 1994), we stated that:

> [i]f an attorney's loyalty is compromised . . . because he is influenced by a conflict in loyalties to other defendants, third parties, or the government, the law cannot

tolerate the risk that the attorney will fail to subject the prosecution's case to the kind of adversarial challenge necessary to ensure that the accused receives the effective assistance of counsel as guaranteed by the Sixth Amendment.

*Id.* at 360. However, the trial court's 23B findings show there is no conflict in this case.

■ Marvin's conflict of interest claim is apparently premised on Rule 1.10 of the Utah Rules of Professional Responsibility. Rule 1.10 prohibits lawyers who are "associated as a firm" from representing a client when "any one of them practicing alone would be prohibited from doing so." Utah Rules of Professional Conduct Rule 1.10. Whether lawyers practice together as a firm depends on the facts and circumstances of each case. *See id.* cmt. It depends upon how they hold themselves out to the public, how they conduct themselves, and the terms of any relevant agreement. *See id.*

In this case the facts show that the attorneys of the Weber County Public Defender's Association do not practice together "as a firm." Snider is under contract with the Public Defenders' Association for the purpose of handling appeals from district court matters in the Ogden Department of the Weber County District Court. There are no financial connections between Snider and Caine, and Snider does not work as trial counsel on any Ogden district court cases. The two also do not share office space. As soon as an appeal is filed, the case file is transferred from the Association's offices to Snider's offices and no one from the Association has access to it. Furthermore, Snider has previously brought claims against Caine alleging ineffective assistance of counsel. Thus, we conclude there is no conflict of interest between Snider and Caine, and any argument to the contrary is wholly frivolous.

■ The third and final claim raised by Marvin is that the state failed to honor its obligations under the plea agreement, and, therefore, his plea was not knowing and voluntary. Ordinarily, a motion to withdraw a guilty plea is a prerequisite to challenging the voluntariness of that plea. *See State v. Gibbons*, 740 P.2d 1309, 1311 (Utah 1987)

(citing *State v. Norton,* 675 P.2d 577, 581 (Utah 1983); *State v. Steggell,* 660 P.2d 252, 254 (Utah 1983)). Marvin has made no such motion. We will, however, entertain this issue for the first time on appeal if plain error or exceptional circumstances exist. *See id.*

■ To establish plain error a defendant must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Dunn,* 850 P.2d 1201, 1208 (Utah 1993). We turn first to the element of harm or prejudice. "If there is no prejudice, we have no reason to reach the other elements of the analysis." *Id.* at 1224.

In this case, even if there was an error, no harm resulted. Regardless of whether the State fulfilled its obligation to use its best efforts to have the extradition proceedings against Marvin in Tennessee and Idaho dismissed, both have in fact been dismissed. Therefore, any breach committed by the state, if in fact there was one, was harmless, and plain error cannot be shown. Furthermore, there are no exceptional circumstances which would warrant this court's review of any breach of the plea agreement between Marvin and the state.

Because we find that Marvin's claims are wholly frivolous, we affirm his conviction and dismiss this appeal. Furthermore, we grant Snider permission to withdraw from his representation of Marvin.

HOWE, C.J., DURHAM, Associate C.J., and STEWART, and RUSSON, JJ., all concur in Justice ZIMMERMAN's opinion.